IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                                          No. CR 06-907 JB

FRANCISCO ESTANISLAO-MENDOZA,

       Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Sentencing Memorandum on Behalf of

Francisco Estanislao-Mendoza, filed September 27, 2006 (Doc. 34)("Sentencing Memorandum");

and (ii) the Amended Memorandum on Behalf of Francisco Estanislao-Mendoza, filed December

28, 2006 (Doc. 39)("Amended Memorandum").  The Court held sentencing hearings in this matter

on December 13, 2006 and February 2, 2007.  The primary issues are: (i) whether the United States

Probation Office ("USPO"), in calculating the Defendant Francisco Estanislao-Mendoza's offense

level, correctly added sixteen levels to Estanislao-Mendoza's offense level, pursuant to U.S.S.G. §

2L1.2(b)(1)(A), because he was previously deported or unlawfully remained in the United States

after being convicted of a felony that involved a crime of violence; (ii) whether the USPO improperly

assigned Estanislao-Mendoza two criminal history points in association with a 1997 conviction for

battery, because Estanislao-Mendoza was in California state custody at the time the offense was

alleged to have occurred;  and (iii) whether the Court should vary from the sentence the United States

Sentencing Guidelines recommend, because the guideline imprisonment range is unreasonable.

Because Estanislao-Mendoza has withdrawn his objections to the USPO's offense level and criminal

history calculations, and because the Court believes that the guideline sentence the USPO has calculated is reasonable, the Court will dismiss his objections as moot in part, overrule them in part, and deny the motion to vary from the Guidelines.

## FACTUAL BACKGROUND

In calculating Estanislao-Mendoza's criminal history category in its Presentence Investigation Report ("PSR"), the USPO attributed criminal history points in association with two previous convictions.  The first incident involved an April 17, 1992 felony conviction in Santa Monica, California Superior Court for assault with intent to commit rape.  See PSR ¶ 21, at 6-7.  The second incident involved a September 5, 1997 misdemeanor conviction in Los Angeles Municipal Court for battery.  See PSR ¶ 22, at 7.

## PROCEDURAL BACKGROUND

On August 1, 2006, Estanislao-Mendoza pled guilty to a one-count indictment charging unlawful re-entry of an alien previously convicted of an aggravated felony in violation of 8 U.S.C. § 1326(a)(1), (a)(2), and (b)(2).  See Non Fast Track Plea Agreement ¶ 3, at 2, filed August 1, 2006 (Doc. 33); Indictment, April 25, 2006 (Doc. 10).  In calculating Estanislao-Mendoza's guideline sentence, the USPO incorporated a base offense level of eight, pursuant to U.S.S.G. § 2L1.2, and added sixteen levels because his 1992 felony conviction for assault with intent to commit rape was a crime of violence, see U.S.S.G. § 2L1.2(b)(1)(A)(ii).  See PSR ¶¶ 11-12, at 4.  The USPO then subtracted three levels for Estanislao-Mendoza's acceptance of responsibility under U.S.S.G. § 3E1.1.  See PSR ¶ 17, at 5.  Estanislao-Mendoza's adjusted offense level of twenty-one, combined with his criminal history category of IV, results in a guideline imprisonment range of fifty-seven to seventy-one months.

Estanislao-Mendoza requests that the Court impose a sentence below the recommended guideline range.  Specifically, Mendoza submits that a sentence of eight months, and a waiver of any costs, fees, and fines, would be just and proper.  See Sentencing Memorandum at 7.  The United States opposes the requested relief.  See Response to Defendant's Sentencing Memorandum at 8, filed November 8, 2006 (Doc. 38).

## LAW REGARDING GUIDELINE SENTENCES

The Supreme Court of the United State's holding in United States v. Booker, 543 U.S. 296 (2005), "requires a sentencing court to consider Guideline ranges, but it permits the court to tailor the sentence in light of other statutory concerns as well."  Id. at 245-46.  Under the new advisory Guidelines scheme, "district courts have a freer hand in determining sentences."  United States v. Trujillo-Terrazas, 405 F.3d 814, 819 (10th Cir. 2005).  Thus, "while the Guidelines will exert gravitational pull on all sentencing decisions . . . district courts now have more discretion to tailor sentences to the individual circumstances of a defendant."  Id.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. . . .

18 U.S.C. § 3553(a)(2)(A)-(D).  See 18 U.S.C. § 3551 ("[A] defendant who has been found guilty of an offense described in any Federal Statute . . . shall be sentenced in accordance with the

provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case."). To achieve these purposes, 18 U.S.C. § 3553(a) directs sentencing courts to consider: (i) the Guidelines, (ii) the nature of the offense and the defendant's character; (iii) the types of available sentences; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims. See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines are no longer mandatory, the Tenth Circuit has clarified that, while the Guidelines are one of several factors enumerated in 18 U.S.C. § 3553(a), they are entitled to considerable deference. See United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many"). They are significant because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses." Id. (internal quotations omitted). See United States v. Kristl, 437 F.3d 1050, 1054 (10th Cir. 2006)(holding that sentences within the Guidelines' recommended range will be presumed reasonable). In summation, a sentencing court must now consider all the factors enumerated in 18 U.S.C. § 3553, including the Guidelines, and resolve conflicts between them; the Guidelines remain a highly significant factor in the court's analysis and sentences that fall within the Guidelines' range are presumptively reasonable.

Moreover, in Justice Breyer's remedial opinion in United States v. Booker, the Supreme Court recognized the important role that the advisory Guidelines continue to play in facilitating Congress' goal of achieving national uniformity of sentencing. See 543 U.S. at 246. To conform with Congressional intent, sentences must be "reasonable." See id. at 260-61. Consistent with that

recognition, and the presumptive reasonableness of guideline sentences, the Tenth Circuit has adopted a two-step approach to reviewing criminal sentences for reasonableness.  See United States v. Kristl, 437 F.3d at 1055.  First, the Tenth Circuit reviews the district court's consideration of the applicable guideline range; if "the district court properly considered the relevant Guidelines range and sentenced the defendant within that range, the sentence is presumptively reasonable."  Id. Second, once this presumption is established, the burden shifts to the defendant to demonstrate why the sentence is unreasonable in light of the other relevant sentencing factors.  See id.

On the other hand, criminal sentences that vary materially from the properly calculated guideline sentencing range are not accorded a presumption of reasonableness.  See United States v. Cage, 451 F.3d at 594-95.  The Tenth Circuit has explained that the determination whether a sentence is reasonable depends on the strength of the correlation between the magnitude of the presence of the factors enumerated in 18 U.S.C. § 3553(a) and the extent of the district court's departure from the guideline sentence.  See id.

## ANALYSIS

### I.    THE COURT WILL OVERRULE ANY OBJECTION TO PARAGRAPHS 34 AND 35 AS MOOT.

Estanislao-Mendoza notes that paragraphs 34 and 35 of the PSR incorrectly refer to him as "Montoya."  Sentencing Memorandum at 1.  On November 8, 2006, the USPO issued changes to the PSR to correct the typographical errors in paragraphs 34 and 35.  See Memorandum from Shawn Day, United States Probation Officer, to the Court at 1 (dated November 8, 2006).  At the February 2, 2007, sentencing hearing, Estanislao-Mendoza's counsel indicated that these changes successfully addressed his objection.  See Transcript of Hearing at 3:21-25 (Baiamonte)("February 2

Transcript").[1]  Because the USPO has corrected the typographical errors in paragraphs 34 and 35, the Court will dismiss Estanislao-Mendoza's objections to those paragraphs as moot.

## II.   THE COURT WILL OVERRULE ANY OBJECTION TO THE SIXTEEN-LEVEL ENHANCEMENT FOR A PRIOR CONVICTION OF A FELONY THAT IS A CRIME OF VIOLENCE.

In calculating Estanislao-Mendoza's guideline sentence, the USPO incorporated a base offense level of eight, pursuant to U.S.S.G. § 2L1.2, and added sixteen levels because his 1992 felony conviction for assault with intent to commit rape was a crime of violence, see U.S.S.G. § 2L1.2(b)(1)(A)(ii).  See PSR ¶¶ 11-12, at 4.  Estanislao-Mendoza does not contend that the USPO incorrectly applied U.S.S.G. § 2L1.2(b)(1)(A)(ii) or that his 1992 felony conviction was not for a crime of violence under the Guidelines.  See Transcript of Hearing at 4:7-12 (Baiamonte)(taken December 13, 2006)("December 13 Transcript"); February 2 Transcript at 4:14-16 (Baiamonte)(conceding that Estanislao-Mendoza's assault conviction "would be fairly within the parameters of the federal Sentencing Guidelines").  Rather, Estanislao-Mendoza requests that the Court vary from the guideline sentence consistent with its authority under United States v. Booker.

Estanislao-Mendoza  represents that the sexual activity underlying his 1992 conviction was consensual, and that the relatively brief sentence the California court imposed upon him in association with the conviction reflects the minor nature of the crime.  See December 13 Transcript at 5:6-15; 5:23-6:4 (Baiamonte).  Estanislao-Mendoza requests the Court vary from the guideline sentence because this "relatively minor case" in the state system now has "enormous ramifications" in the federal system.  Id. at 6:2-4 (Baiamonte).

---

[1]The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Because the Court believes that the USPO has correctly applied U.S.S.G. § 2L1.2(b)(1)(A)(ii) in calculating Estanislao-Mendoza's sentence under the Guidelines, and because Estanislao-Mendoza concedes that his 1992 conviction was for a crime of violence under the Guidelines, to the extent that his sentencing memorandum can be construed as objecting to the USPO's sixteen-level enhancement, the Court will overrule the objection. The Court will not consider Estanislao-Mendoza's arguments regarding the nature of his 1992 offense for the purpose of calculating his guideline sentence, but, as the Court will explain, has carefully considered them in deciding whether to grant a variance from the guideline sentence under United States v. Booker.

## III. THE COURT WILL DISMISS ESTANISLAO-MENDOZA'S OBJECTION TO PARAGRAPH 22 OF THE PSR AS MOOT.

At the December 13, 2006 sentencing hearing, Estanislao-Mendoza argued that he could not have committed the 1997 battery described in paragraph 22 of the PSR because he was incarcerated during the period the offense was alleged to have occurred. See December 13 Transcript at 9:22-25 (Estanislao-Mendoza). To the extent that Estanislao-Mendoza is challenging the legitimacy of his underlying criminal conviction, he bears the burden of proving, by a preponderance of the evidence, that conviction was somehow unconstitutional or otherwise irregular. See United States v. Quintana-Ponce, 129 Fed. Appx. 473 , 475 (10th Cir. 2005); United States v. Cruz-Alcala, 338 F.3d 1194, 1197 (10th Cir. 2003). Because it was unclear at the time of the December 13, 2006 hearing whether Estanislao-Mendoza was in custody at the time of the offense alleged in paragraph 22, the Court continued the sentencing hearing to allow Estanislao-Mendoza's counsel to review the USPO's records related to the 1997 battery conviction. See December 13 Transcript at 14:17-21 (Court).

Estanislao-Mendoza filed his Amended Memorandum on December 28, 2006. In the

Amended Memorandum, Estanislao-Mendoza represents that the USPO provided him with documentation that supports its assertion that he was not incarcerated at the time of his arrest for the battery described in paragraph 22 of the PSR.  See Amended Memorandum at 1.  Estanislao-Mendoza acknowledges that the information the USPO provided is "sufficient to overcome [his] assertions to the contrary," and withdraws his objection to paragraph 22.  See id.  Accordingly, the Court will dismiss Estanislao-Mendoza's objection to paragraph 22 as moot.

## IV.   THE COURT WILL IMPOSE A GUIDELINE SENTENCE.

Estanislao-Mendoza argues that the Court should vary from the sentence the USPO has calculated under the Guidelines.  Estanislao-Mendoza does not argue that the USPO has incorrectly calculated the guideline sentence, but contends the facts and circumstances surrounding his case warrant a variance.  Specifically, Estanislao-Mendoza contends that the nature and circumstances surrounding his offense of conviction and his 1992 offense for assault with intent to commit rape, and his own personal history and characteristics, counsel for a variance.  See Sentencing Memorandum at 6-7.  The Court disagrees.  The Court has carefully considered not only the Guidelines, but also the other 18 U.S.C. § 3553(a) factors applicable to its sentencing analysis, and believes that a guideline sentence is both reasonable and is sufficient, without being greater than necessary, to achieve federal sentencing goals.

### A.   THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AND CHARACTERISTICS OF THE OFFENDER.

#### 1.   The Nature and Circumstances of the Offense.

Estanislao-Mendoza has not argued, and the Court does not believe, that his offense of conviction -- illegal reentry after previously being convicted of a felony -- is not a serious offense.

Congress, as the elected branch of government, has decided that the crime with which Estanislao-Mendoza is charged is a serious offense. See 8 U.S.C. § 1326(b)(2) (authorizing up to twenty years imprisonment for illegal reentry). Policy decisions are best left with the legislative branch.

Estanislao-Mendoza argues, however, that the circumstances surrounding his offense mitigate its seriousness. Estanislao-Mendoza represents that he returned to the United States to earn money to pay for medical treatment for his girlfriend and for his mother, who suffers from diabetes. See February 2 Transcript at 8:22-9:2 (Estanislao-Mendoza). While the Court is sympathetic to the challenges that Estanislao-Mendoza faces, it recognizes that many illegal aliens return to the United States for economic reasons. Indeed, it is heart-breaking how many illegal aliens the Court has encountered who come to the United States to secure sufficient funds to pay family medical expenses. If an economic motivation alone -- for whatever reason -- were sufficient to justify a variation from the advisory guideline range, most defendants would likely qualify for a variance and the exception would swallow the rule.

Estanislao-Mendoza characterizes his 1992 conviction for assault with intent to commit rape as "relatively minor." December 13 Transcript at 6:2-3 (Baiamonte). Estanislao-Mendoza argues that he did not physically harm the victim, and that he never intended to rape the victim. See Sentencing Memorandum at 6; December 13 Transcript at 10:10 (Estanislao-Mendoza). Estanislao-Mendoza maintains that the sexual encounter described in paragraph 21 of the PSR was consensual. See Sentencing Memorandum at 6; December 13 Transcript at 10:8 (Estanislao-Mendoza). Estanislao-Mendoza contends that, once the victim expressed to him that she did not wish to go any further, he immediately stopped and allowed the victim to go. See Sentencing Memorandum at 6; December 13 Transcript at 10:13-15 (Estanislao-Mendoza). Finally, Estanislao-Mendoza suggests

the relatively short term of imprisonment the California court imposed affirms the minor nature of

the crime.  See December 13 Transcript at 5:17-6:4 (Baiamonte).  Estanislao-Mendoza requests the

Court to vary from the guideline sentence because this "relatively minor case" in the California state

system now has "enormous ramifications" in the federal system.   Id. at 6:2-4 (Baiamonte).

Irrespective of Estanislao-Mendoza's characterization of the circumstances surrounding his

1992 offense, the Court cannot lose sight of the fact that he was convicted of assault with intent to

commit rape.  The Court should not minimize the seriousness of that offense based solely on

Estanislao-Mendoza's unsubstantiated version of the events, when he has previously been charged

with the crime and adjudicated guilty in another court of law.  Nor should the Court overlook the

seriousness of the offense because of the length of the sentence the state court chose to impose.  The

Court understands, based on its own experience, that the seriousness of the underlying crime is often

only one of many factors a sentencing court must consider, and will therefore not assume that the

length of the sentence the California court imposed reflects its impression of the lack of seriousness

of Estanislao-Mendoza's crime.

The Court believes that Estanislao-Mendoza's offense of conviction, and the offense that

constitutes the basis for the significant enhancement in his sentence for that offense are both serious

offenses.  Moreover, Estanislao-Mendoza has not presented any evidence that the circumstances

under which he committed those offenses are extraordinary or explained with sound reasons why

they counsel for a variance from the guideline sentence.

### 2.      History and Characteristics of the Defendant.

Estanislao-Mendoza graduated from John Marshall High School in Los Angeles, California

in 1989.  See PSR ¶ 39, at 11.  He subsequently attended a community college in the Los Angeles

area and represents that he is trained as a dental assistant.  See id. ¶ 39, at 11-12.

Estanislao-Mendoza reports having six siblings, five of whom reside in the Los Angeles area and one who resides in El Salvador.  See id. ¶ 33, at 10.  Estanislao-Mendoza states that he has never been married, but that he has two children by Sandra Irias, with whom he was in a common-law relationship from 1987 to 1992.  See id. ¶ 35, at 11.  Estanislao-Mendoza represents that his relationship with Irias deteriorated after his 1992 conviction for assault with intent to commit rape and that he has not had any contact with Irias or his children since 1995.  See id.

Estanislao-Mendoza's personal history and his family situation, however, is not significantly different from many defendants charged with illegally re-entering the United States after deportation. Many of the defendant's charged with re-entry crimes have prior convictions, prior deportations, or both, and many have family, including immediate family, in the United States.  Estanislao-Mendoza's personal history and characteristics do not counsel for a variance.

**B.    THE NEED FOR THE SENTENCE IMPOSED TO PROMOTE CERTAIN STATUTORY OBJECTIVES, INCLUDING RESPECT FOR THE LAW, TO PROVIDE JUST PUNISHMENT, ADEQUATE DETERRENCE AND TO PROTECT THE PUBLIC FROM FURTHER CRIMES OF THE DEFENDANT.**

Estanislao-Mendoza has not demonstrated that he can overcome the presumption of reasonableness that will attach to a sentence within the advisory sentencing guideline range. Estanislao-Mendoza has not explained in what manner his case is unique from other defendants convicted of illegal reentry or why the guideline sentence is greater than necessary to comply with federal sentencing goals.

Among other objectives, the Court's sentence should promote respect for the law, provide just punishment, and provide adequate deterrence to both the defendant and to the public at large.

Estanislao-Mendoza has been in custody since February 11, 2006.  See PSR at 1.  Estanislao-Mendoza asserts that a lengthy sentence is not necessary to achieve these goals, because, based on his previous incarceration, and the time he has already served in association with this offense, he understands the seriousness of reentry laws, and that he can never return to the United States. See December 13 Transcript at 11:13-18.

The Court notes that, although Estanislao-Mendoza was initially sentenced only to 180 days imprisonment in connection with this 1992 conviction for assault with intent to commit rape, his sentence was later increased to two years because of a probation violation.  The Court acknowledges that Estanislao-Mendoza's conviction for assault with intent to commit rape is now somewhat in the past, and does not believe -- especially because he will not be permitted to return to the United States -- that he poses a significant threat to public safety.  On the other hand, Estanislao-Mendoza's previous entanglements with the legal system have unfortunately not dissuaded him from reentering the United State illegally.  In any case, the Court does not believe that these factors counsel a variance from the guideline sentence.

### C.      THE NEED TO AVOID UNWARRANTED SENTENCING DISPARITIES BETWEEN DEFENDANTS WHO HAVE COMMITTED SIMILAR CRIMES.

The Court is also concerned about the need to avoid unwarranted sentencing disparities between defendants who have committed similarly situated crimes.  While the Court has carefully considered the arguments that Estanislao-Mendoza has made in support of his request for a variance from the guideline sentence, most defendants charged with illegally entering the United States after deportation could make arguments similar to the ones that Estanislao-Mendoza makes.  Estanislao-Mendoza has not presented evidence or demonstrated unique facts that suggest to the Court it should

treat his case differently from the regrettably high number of defendants that come before it charged with the same crime as Estanislao-Mendoza.

The Court will impose a sentence within the range the Guidelines recommend.  The Court is obligated to impose a reasonable sentence that is sufficient without being greater than necessary to achieve federal sentencing goals.  Estanislao-Mendoza has not overcome the presumption of reasonableness that attaches to a sentence within the advisory sentencing guideline range or explained why a guideline sentence would be greater than necessary to satisfy the statutory objectives Congress has identified in 18 U.S.C. § 3553(a).

**IT IS ORDERED** that Estanislao-Mendoza's objections to the PSR are dismissed as moot in part and overruled in part.  Estanislao-Mendoza's request for a variance from the sentence the Guidelines recommend is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

David C. Iglesias
  United States Attorney for the
    District of New Mexico
Robert D. Ortega
  Assistant United States Attorney
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

James P. Baiamonte
Albuquerque, New Mexico

     *Attorney for the Defendant*